## UNITED STATES BANKRUPTCY COURT
## DISTRICT OF DELAWARE

| | |
|---|---|
| In re:<br>Centaur, LLC., *et al.*, | Case No. 10-10799 (KJC) |
| Debtors. | JOINTLY ADMINISTERED<br>Chapter 11 Cases |
| FTI CONSULTING, INC., as Trustee to the<br>Centaur, LLC Litigation Trust,<br><br>Plaintiff,<br>v.<br><br>JOSEPH SWEENEY and LINDA PORR<br>SWEENEY,<br><br>Defendants. | Adversary No. |

## COMPLAINT

Plaintiff FTI Consulting, Inc., in its capacity as Trustee of the Centaur, LLC Litigation Trust (the "Trust"), brings this action against Defendants Joseph Sweeney and Linda Porr Sweeney ( "Defendants") for the recovery of fraudulent transfers, and respectfully states as follows:

### I.   NATURE OF THE ACTION

1.    The Trust brings this action to avoid over $11 million of constructively fraudulent transfers made by Valley View Downs, LP ("Valley View Downs") to Defendants as liquidating

1

partnership distributions, whereby Defendants relinquished their interests in Valley View Downs back to the limited partnership.

2.      Valley View Downs was insolvent at the time of the transfers or became insolvent as a result of the transfers. Valley View Downs also received far less than reasonably equivalent value in exchange for the over $11 million Valley View Downs transferred to Defendants.

## II.   JURISDICTION AND VENUE

3.      This Court has jurisdiction over this adversary proceeding pursuant to 28 U.S.C. §§ 157 and 1334.

4.      This action is a core proceeding under 28 U.S.C. § 157.

5.      Venue is proper in this Court pursuant to 28 U.S.C. § 1409.

## III.   PARTIES AND OTHER RELEVANT PERSONS AND ENTITIES

### A.   PLAINTIFF

6.      Plaintiff FTI Consulting, Inc. is the duly authorized and appointed trustee to the Centaur, LLC Litigation Trust, which, as explained below, was formed pursuant to the confirmed plan of reorganization (the "Confirmed Plan") in *In re Centaur, LLC et al.*, jointly administered under case number Case No. 10-10799 (the "Centaur Bankruptcy Case").

7.      Pursuant to the Confirmed Plan and the Centaur, LLC Litigation Trust Agreement, the debtors in the Centaur Bankruptcy Case transferred to the Trust all of their rights and interests in the "Designated Avoidance Actions," which, as defined in the Confirmed Plan, include the avoidance actions asserted herein by the Trust against Defendants.

2                                                    1049 002

**B.     DEFENDANTS**

8.     Defendants Joseph Sweeney and Linda Porr Sweeney reside at 177 River Drive, Lancaster, Pennsylvania, 17603.

**C.     THE CENTAUR DEBTORS**

9.     On October 28, 2009, Valley View Downs, a Pennsylvania limited partnership, and Centaur PA Land, a Pennsylvania limited partnership, filed voluntary petitions for relief under chapter 11 of title 11 of the United States Code in the United States Bankruptcy Court for the District of Delaware.  Valley View Downs and Centaur PA Land are wholly owned subsidiaries of Centaur, LLC ("Centaur LLC").

10.     On March 6, 2010, Centaur LLC and twelve of its wholly owned subsidiaries also filed voluntary petitions for relief under chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the District of Delaware.  The bankruptcy case of these debtors along with the bankruptcy cases of Valley View Downs and Centaur PA Land are jointly administered before the Honorable Kevin J. Carey under Case No. 10-10799 and are defined above as the Centaur Bankruptcy Cases.

11.     Centaur LLC and its subsidiaries are domestic horse racing, off-track betting, and casino operators.  At the time of their bankruptcy petitions, Centaur LLC and its subsidiaries owned, operated, and had interests in racing and casino facilities in Indiana and Colorado, and also had a project in-progress in northwest Pennsylvania.

12.     At the time that it filed for bankruptcy, Valley View Downs owned a harness racing license and intended to develop a race track with a casino — commonly referred to as a "racino" — to be known as "Valley View Downs," in Lawrence County, Pennsylvania, 55 miles

3                                                                      1049.002

northwest of Pittsburgh. Centaur PA Land owned approximately 250 acres of land upon which Valley View Downs intended to construct the Valley View Downs racino. Valley View Downs and Centaur PA Land filed for bankruptcy when Valley View Downs failed to secure a required gaming license in the time allotted under the terms of various loan agreements.

## IV.    FACTUAL BACKGROUND

### A.    VALLEY VIEW DOWNS IS AWARDED A HARNESS RACING LICENSE

13.    From late 2002 to until 2009, Valley View Downs sought to construct and operate a racino in the State of Pennsylvania (the "Racino Project"). Two critical prerequisites for engaging in such a business in Pennsylvania were (i) the acquisition of a harness racing license (the "Racing License") — required for the operation of a harness racing track; and (ii) the acquisition of a Category 1 Slot License (the "Gaming License") — required for the operation of slot machines.

14.    In December 2002, Valley View Downs filed an application with the Pennsylvania State Harness Racing Commission (the "Commission") for the State's last available harness racing license. To acquire the Racing License, however, required Valley View to engage in a protracted and contentious competition with another applicant for the same license — Bedford Downs Management Corporation.

15.    Finally, in September 2007, after years of litigation, proceedings before administrative bodies, and incurring massive debt obligations, Valley View Downs was awarded the last available harness racing license in the State of Pennsylvania. This license was non-transferrable and, despite the significant debt obligations Valley View Downs took on to get it, represented little, if any, value to Valley View Downs by itself. Indeed, before Valley View

4                                                                                                    1049 002

Downs could begin operating its proposed Racino Project, and begin servicing the significant debt obligations it had incurred, it first had to obtain a Gaming License.

16.    To become eligible for the receipt of a Gaming License, Valley View Downs had to first have a Racing License. Upon receipt of the Racing License, Valley View Downs had to submit an application for the Gaming License to the Pennsylvania Gaming Control Board (the "Gaming Board") — a different administrative body than that from which it had sought the Racing License — and go through another application process. Although receipt of the Racing License was a precondition to receiving a Gaming License, it by no means guaranteed that Valley View Downs would receive a Gaming License.

17.    The success of the Valley View Downs Racino Project depended upon Valley View Downs obtaining a Gaming License because the majority of Valley View Downs' projected revenue derived from the operation of slot machines. Without the Gaming License, the proposed Racino Project was not economically viable and, as a result, Valley View Downs would have no way of generating sufficient revenue to service its debt.

## B.    VALLEY VIEW DOWNS MAKES A DISTRIBUTION TO DEFENDANTS IN RETURN FOR THEIR INTERESTS IN VALLEY VIEW DOWNS

18.    In anticipation of moving forward with its application for the Gaming License, Valley View Downs and Defendants entered into an October 1, 2007 agreement (the "Agreement") whereby Valley View Downs agreed to make liquidating partnership distributions in the amount of $11,199,000 to Defendants for their approximately 7.92% minority interests in Valley View Downs.

19.    Under the terms of the Agreement, Valley View Downs was to distribute the $11,199,000 to Defendants as follows: on or before October 31, 2007, Valley View Downs

5

would distribute $8,532,333 to Defendants (the "2007 Cash Transfer") and issue Defendants a promissory note (the "Promissory Note"). Pursuant to the terms of the Promissory Note, Valley View Downs was to pay $2,666,667, plus interest, to Defendants by July 1, 2008.

20.     Valley View Downs honored the Agreement by taking on additional debt to make the 2007 Cash Transfer to Defendants on October 30, 2007. On the same date, Valley View Downs also delivered the Promissory Note to Defendants. As a result of this transaction, on October 30, 2007, Defendants' rights and interests in Valley View were automatically relinquished to Valley View Downs.

21.     The price Valley View Downs paid, however, was objectively unreasonable. To justify making an $11,199,000 distribution to Defendants for their minority rights and interests in Valley View Downs would have required the parties to value Valley View Downs at approximately $140 million on the date of the transaction. No legitimate valuation method could have reasonably arrived at this figure because Valley View Downs was insolvent on the date it made the 2007 Cash Transfer and delivered the Promissory Note to Defendants, or was rendered insolvent by the transfers. The rights and interests Defendants relinquished in the transaction were therefore essentially valueless.

22.     Moreover, at the time of the transfers, the value of the Valley View Downs' proposed Racino Project was grossly overestimated by Valley View Downs. Indeed, Valley View Downs' revenue projections related to the Racino Project were highly speculative because they relied on having the Gaming License, the acquisition of which was, at the time, uncertain at best, and, was never acquired by Valley View Downs. And perhaps more importantly, even if

6                                                                1049.002

Valley View Downs had received the Gaming License, the project was not economically viable due to the massive debt it took on during its bid to win the Racing License.

## C.   VALLEY VIEW DOWNS PAYS OFF THE PROMISSORY NOTE

23.   On or around June 30, 2008, Valley View Downs paid off the Promissory Note. Specifically, Valley View Downs paid the Sweeneys $2,769,397.62 (the "2008 Transfer").

24.   Valley View Downs was insolvent at the time of the 2008 Transfer or was rendered insolvent by it.

25.   Because Valley View Downs did not receive reasonably equivalent value in exchange for the Promissory Note, Valley View Downs did not receive reasonably equivalent value when it made the 2008 Transfer that extinguished its obligations under the Promissory Note.

## D.   VALLEY VIEW DOWNS FAILS TO RECEIVE THE GAMING LICENSE AND FILES FOR BANKRUPTCY

26.   More than six months after it submitted its application, Valley View Downs still had not been granted the Gaming License. Accordingly, the complex financing package that Valley View Downs had obtained for the Racino Project was about to expire. Facing the prospect of losing its funding for the project, Valley View Downs requested that the Gaming Board grant Valley View Downs a conditional Gaming License.

27.   On or around July 10, 2008, the Gaming Board unanimously denied Valley View Downs' request for a conditional Gaming License, stating that it needed additional time to complete its investigation. Valley View Downs never received the Gaming License and filed for bankruptcy on October 28, 2009.

1049 002

28.     At bottom, because Valley View Downs was insolvent on the date of the transfers or was rendered insolvent by the transfers, the minority rights and interests in Valley View Downs that Defendants provided in exchange for the 2007 Cash Transfer and the Promissory Note conferred little to no value to Valley View Downs. Similarly, Valley View Downs received little or no value when it paid off the Promissory Note by making the 2008 Transfer to Defendants.

29.     Accordingly, the Trust seeks to avoid the transfers and obligations Valley View Downs made to Defendants, including the 2007 Cash Transfer, the Promissory Note, and the 2008 Transfer, as fraudulent transfers under both the Bankruptcy Code and applicable state fraudulent transfer law.

## V.     CAUSES OF ACTION

### COUNT ONE: AVOIDANCE OF THE 2007 CASH TRANSFER
### (11 U.S.C. § 548(a)(1)(B))

30.     The Trust repeats and re-alleges the allegations set forth in all preceding paragraphs of this Complaint, as if set forth in full here.

31.     Valley View Downs transferred $8,532,333 to Defendants on October 30, 2007, in partial payment for their minority rights and interests in Valley View Downs.

32.     The $8,532,333 million that Valley View Downs transferred to Defendants was property in which Valley View Downs had an interest.

33.     Valley View Downs did not receive reasonably equivalent value for the 2007 Cash Transfer.

8                                                        1049.002

34.    Valley View Downs was insolvent at the time of the 2007 Cash Transfer or was rendered insolvent by the 2007 Cash Transfer, because, among other things, its liabilities far exceeded its assets.

35.    Accordingly, the 2007 Cash Transfer is avoidable under 11 U.S.C. § 548(a)(1)(B) and recoverable under 11 U.S.C. § 550.

36.    As a result of the 2007 Cash Transfer, Valley View Downs' creditors have been damaged in an amount to be determined at trial.

### COUNT TWO: AVOIDANCE OF THE 2007 CASH TRANSFER
### (11 U.S.C. § 544 & Pennsylvania Uniform Fraudulent Transfer Act § 5105)

37.    The Trust repeats and re-alleges the allegations set forth in all preceding paragraphs of this Complaint, as if set forth in full here.

38.    The 2007 Cash Transfer is avoidable under Pennsylvania law by actual creditors holding allowable unsecured claims against Valley View Downs.

39.    At the time, or as a result of, the 2007 Cash Transfer, Valley View Downs had one or more creditors with claims totaling more than the amount transferred.

40.    Accordingly, the 2007 Cash Transfer is avoidable under 11 U.S.C. § 544(b) and § 5105 of the Pennsylvania Uniform Fraudulent Transfer Act.

41.    The Trust may recover the avoided transfers under 11 U.S.C. § 550 and § 5107 of the Pennsylvania Uniform Fraudulent Transfer Act for the benefit of the estate and its creditors.

42.    As a direct result of the 2007 Cash Transfer, Valley View Downs' creditors have been damaged in an amount to be determined at trial.

9

### COUNT THREE:  AVOIDANCE OF THE PROMISSORY NOTE AND THE 2008 TRANSFER
### (11 U.S.C. § 548(a)(1)(B))

43.     The Trust repeats and re-alleges the allegations set forth in all preceding paragraphs of this Complaint, as if set forth in full here.

44.     Valley View Downs delivered the Promissory Note to Defendants on October 30, 2007, in partial payment for their minority rights and interests in Valley View Downs, and paid off the note with interest on June 30, 2008, by transferring $2,769,397.62 to the Sweeneys.

45.     The Promissory Note Transfer and the 2008 Transfer were transfers to Defendants of property in which Valley View Downs had an interest.

46.     Valley View Downs did not receive reasonably equivalent value for the Promissory Note or the 2008 Transfer.

47.     Valley View Downs was insolvent when it delivered the Promissory Note, or was rendered insolvent by the Promissory Note, because, among other things, its liabilities far exceeded its assets when the obligation was incurred, or as a result of the obligation.

48.     Valley View Downs was also insolvent at the time of the 2008 Transfer because, among other things, its liabilities far exceeded its assets when the transfer was made.

49.     Accordingly, the Promissory Note and the 2008 Transfer are avoidable under 11 U.S.C. § 548(a)(1)(B) and recoverable under 11 U.S.C. § 550.

50.     As a result of the delivery of the Promissory Note and the 2008 Transfer to Defendants, Valley View Downs' creditors have been damaged in an amount to be determined at trial.

10                                          1049.002

## COUNT FOUR: AVOIDANCE OF THE PROMISSORY NOTE AND THE 2008 TRANSFER
### (11 U.S.C. § 544 & Pennsylvania Uniform Fraudulent Transfer Act § 5105)

51.     The Trust repeats and re-alleges the allegations set forth in all preceding paragraphs of this Complaint, as if set forth in full here.

52.     The Promissory Note and the 2008 Transfers are avoidable under Pennsylvania law by actual creditors holding allowable unsecured claims against Valley View Downs.

53.     At the time the Promissory Note was delivered and the 2008 Transfer was made, or as a result of such transfers, Valley View Downs had one or more creditors with claims totaling more than the amount of the transfers.

54.     Accordingly, the Promissory Note and the 2008 Transfer are avoidable under 11 U.S.C. § 544(b) and § 5105 of the Pennsylvania Uniform Fraudulent Transfer Act.

55.     The Trust may recover the avoided transfers under 11 U.S.C. § 550 and § 5107 of the Pennsylvania Uniform Fraudulent Transfer Act for the benefit of the estate and its creditors.

56.     As a direct result of the delivery of the Promissory Note and the 2008 Transfers, Valley View Downs' creditors have been damaged in an amount to be determined at trial.

## VI.     REQUEST FOR RELIEF

THEREFORE, the Trust respectfully prays for judgment in its favor, and against the Defendants as follows:

a.      Avoiding as fraudulent the $8,532,333 2007 Cash Transfer to Defendants;

b.      Avoiding as fraudulent the Promissory Note issued to Defendants;

c.      Avoiding as fraudulent the $2,769,397.62 2008 Transfer to Defendants;

d.      Awarding the Trust the recovery of the property transferred;

11

f.     Awarding the Trust its reasonable attorneys' fees and costs incurred in the prosecution of this action to the extent allowed by law or equity; and

g.     Awarding the Trust prejudgment and post-judgment interest at the highest rates allowed by law or equity;

h.     Granting the Trust such other and further relief, at law or equity, as the Court determines is just and appropriate.


Dated:  March 16, 2012                         ROSENTHAL, MONHAIT & GODDESS, P.A.


                                               Norman M. Monhait [De. Bar. No. 1040]
                                               P. Bradford deLeeuw [De. Bar. No. 3569]
                                               919 N. Market Street
                                               Suite 1401
                                               Wilmington, DE 19899
                                               302.656.4433 (telephone)
                                               302.658.7567 (facsimile)
                                               nmonhait@rmgglaw.com

OF COUNSEL:

REID COLLINS & TSAI LLP
William T. Reid IV (*pro hac vice*)
 • breid@rctlegal.com
Anegla J. Somers (*pro hac vice*)
 • asomers@rctlegal.com
Two Wall Street, Suite 5200
New York, New York 10005
212.344.5200 (telephone)
212.344.5299 (facsimile)

1049.002

Joshua J. Bruckerhoff (*pro hac vice*)
 • jbruckerhoff@rctlegal.com
Gregory S. Schwegmann (*pro hac vice*)
 • gschwegmann@rctlegal.com
4301 Westbank Drive
Building B, Suite 230
Austin, Texas 78746
512.647.6100 (telephone)
512.647.6129 (facsimile)

1049 002