UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | : | CHAPTER 11 |
| | : | |
| CENTAUR, LLC, *et al.*[1] | : | |
| | : | Case  No. 10-10799 (KJC) |
| Reorganized Debtors | : | Jointly Administered |
| | | |
| | : | |
| FTI CONSULTING, INC., | : | |
| as Trustee to the Centaur, LLC Litigation Trust, | : | |
| | : | |
| Plaintiff, | : | |
| | : | Adv. Proc. No. 12-50423 (KJC) |
| v. | : | (Re:  D.I. 4) |
| | : | |
| JOSEPH SWEENEY and LINDA PORR | : | |
| SWEENEY, | : | |
| | : | |
| Defendants. | : | |
| | : | |

## MEMORANDUM AND ORDER DENYING MOTION TO DISMISS[2]

## BY:   KEVIN J. CAREY, UNITED STATES BANKRUPTCY JUDGE

Before the Court is Joseph Sweeney and Linda Porr Sweeney's (the "Defendants")

Motion to Dismiss the Centaur, LLC Litigation Trust's (the "Litigation Trust") action to avoid

---

[1]The Debtors in these cases are: Centaur, LLC; Centaur Colorado, LLC; Centaur Indiana, LLC; Centaur Racing, LLC; Hoosier Park, L.P.; HP Dining & Entertainment, LLC; Centaur Pennsylvania, LLC; VVD Properties General Partner, LLC; Valley View Downs GP, LLC; VVD Properties, LP; Valley View Downs, L.P.; Centaur PA Land Management, LLC; Centaur PA Land General Partner, LP; and Centaur PA Land, LP.  Debtors Centaur PA Land, LP and Valley View Downs, LP filed their chapter 11 petitions on October 28, 2009.  The remaining Debtors  filed their chapter 11 petitions on March 6, 2010. *See* Order dated April 16, 2010 approving joint administration of the Debtors' chapter 11 cases (Case No. 10-10799, D.I. 166).  On March 15, 2013, the Court entered a Final Decree closing the Debtors' chapter 11 cases, except for the case of Valley View Downs, L.P. (Case No. 09-13761) (Case No. 10-10799, D.I. 2305).

[2] The Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1334 and venue is proper in this Court pursuant to 28 U.S.C. § 1409.  This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(H).

alleged constructively fraudulent transfers made by Valley View Downs, LP to the Defendants. For the reasons set forth below, the Defendants' Motion to Dismiss will be denied.

BACKGROUND

On October 28, 2009 Valley View Downs, LP, a Pennsylvania limited partnership, ("VVD") and Centaur PA Land, LP, a Delaware limited partnership, ("Centaur PA Land") filed voluntary petitions for relief under chapter 11 of the Bankruptcy Code.[3] VVD and Centaur PA Land are both wholly owned subsidiaries of Centaur, LLC, an Indiana limited liability company ("Centaur").[4] On March 6, 2010, Centaur and ten of its wholly owned subsidiaries (the "2010 Centaur Cases," and together with VVD and Centaur PA Land, the "Debtors") filed voluntary petitions for relief under chapter 11 of the Bankruptcy Code.[5] On April 16, 2010, the Court entered an order approving joint administration, for procedural purposes only, of the 2010 Centaur Cases and the VVD and Centaur PA Land cases.[6] On February 18, 2011, this Court entered an Order confirming the Debtors' plan of reorganization.[7] Pursuant to the Confirmed Plan and the Centaur, LLC Litigation Trust Agreement, the Debtors transferred to the Litigation Trust all of their rights and interests in the "Designated Avoidance Actions."[8] FTI Consulting, Inc. was appointed as the Trustee to the Litigation Trust.[9]

---

[3]Case Nos. 09-13760 and 09-13761.

[4]Declaration of Kurt E. Wilson in Support of First Day Motions, Case No. 09-13760, D.I. 4, p.2.

[5]Case No. 10-10799.

[6]Case No. 10-10799, D.I. 166.

[7]Case No. 10-10799, D.I. 1350.

[8]The term "Designated Avoidance Actions" is defined under section 1.37 of the Confirmed Plan as "any Avoidance Actions that may be asserted against Entities or Persons other than Released Persons to avoid those certain transfers of property described on Exhibit "I" to the Disclosure Statement and to recover such transferred property."

[9]Case No. 10-10799, D.I. 1815.

*The Alleged Fraudulent Transfers*

Centaur and its subsidiaries are domestic horse racing, off-track betting, and casino operators.[10] Centaur PA Land owned approximately 250 acres of land upon which VVD intended to construct a racino (the "Venture").[11] There are two critical prerequisites for operating a racino: (1) a racing license, for the operation of a harness racing track, and (2) a gaming license, for the operation of slot machines.[12] From December 2002 through September 2007, VVD incurred a significant amount of debt while engaged in a protracted competition with another applicant for the last available harness racing license in Pennsylvania.[13] VVD eventually secured the racing license, but was unable to receive a gaming license in the time allotted under the terms of various loan agreements, and consequently filed for bankruptcy.[14]

In October 2007, after VVD obtained the racing license, and in anticipation of moving forward with the its application for the gaming license, Centaur, VVD, Centaur Pennsylvania, LLC, Michael C. Forman, and the Defendants entered into an agreement (the "Agreement") pursuant to which VVD agreed to pay the Defendants $11,199,000.00 for their approximately 7.92% minority interest in VVD.[15]  Under the terms of the Agreement, VVD was to distribute the payment to the Defendants as follows:  (i) an initial payment of $8,532,333.00 cash on or about October 31, 2007 (the "2007 Cash Transfer"); and (ii) delivery on or before October 31,

---

[10] Complaint, ¶11.

[11] A racino is what is commonly referred to as a race track with a casino.  Complaint, ¶12.

[12] Complaint, ¶13.

[13] Complaint, ¶14.

[14] Complaint, ¶26 and ¶27.

[15]Complaint, ¶18.  The Litigation Trust describes these transactions as "liquidating partnership distributions."

2007 of a Promissory Note (the "Note") to cover payment of the balance of the purchase price to the Defendants of $2,666,667.00, payable with interest on or before July 1, 2008.[16] On or around June 30, 2008, VVD paid off the Note with accrued interest, totaling $2,769,397.62 (the "2008 Transfer").[17]

  The Complaint alleges four counts of constructive fraud under the Bankruptcy Code and the Pennsylvania Uniform Fraudulent Transfer Act ("PUFTA"). Counts 1 and 2 seek to avoid the 2007 Cash Transfer of $8,532,333.00 from VVD to the Defendants in partial payment for their minority rights and interests in VVD pursuant to Bankruptcy Code §548(a)(1)(B), and Bankruptcy Code §544(b) and the Pennsylvania Uniform Fraudulent Transfer Act ("PUFTA") §5105, respectively.  Counts 3 and 4 of the Complaint seek to avoid the Note and the 2008 Transfer of $2,769,397.62 from VVD to Defendants pursuant to Bankruptcy Code §548(a)(1)(B), and Bankruptcy Code §544(b) and PUFTA §5105, respectively.

  On April 27, 2012, the Defendants filed a motion to dismiss the complaint pursuant to Rule 12(b)(6).[18] The Defendants argue that the Litigation Trust has not met the pleading requirements to state claims for fraudulent transfers and, in the alternative, that the transfers cannot be avoided because they fall within the safe harbor of Bankruptcy Code §546(e) because they are settlement payments made to complete a securities transaction. Oral argument on the Motion to Dismiss was heard on October 3, 2012.

---

[16]Complaint, ¶19.

[17]Complaint, ¶ 23.

[18]Adv. No. 12-50423, D.I. 4 and D.I. 5.

4

## DISCUSSION

(a) <u>Motion to Dismiss Legal Standard</u>

Rule 12 (b)(6), made applicable by Bankruptcy Rule 7012(b), governs a motion to dismiss for failing to state a claim upon which relief can be granted. Fed.R.Civ.P. 12(b)(6); Fed.R.Bankr.P. 7012(b). "The purpose of a motion to dismiss is to test the sufficiency of a complaint, not to resolve disputed facts or decide the merits of the case." *Paul v. Intel Corp. (In re Intel Corp. Microprocessor Antitrust Litig.)*, 496 F. Supp. 2d 404, 407 (D. Del. 2007) citing *Kost v. Kozakiewicz*, 1 F.3d 176, 183 (3d Cir. 1993). When reviewing a motion to dismiss, the Court will construe the complaint "in the light most favorable to the plaintiff." *Burtch v. Milberg Factors, Inc.*, 662 F.3d 212, 220 (3d Cir. 2011) quoting *In re Ins. Brokerage Antitrust Litig.*, 618 F.3d 300, 314 (3d Cir. 2010).

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S.Ct. 1937, 1949, 173 L.Ed.2d 868 (2009) quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570, 127 S.Ct. 1955, 1974, 167 L.Ed.2d 929 (2007). "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, . . . a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. Factual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555 (internal citations omitted).

The Third Circuit Court of Appeals has outlined a three-step process to determine the sufficiency of a complaint under *Twombly* and *Iqbal*:

5

First, the court must "tak[e] note of the elements a plaintiff must plead to state a claim." Second, the court should identify allegations that, "because they are no more than conclusions, are not entitled to the assumption of truth." Finally, "where there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief." *Santiago [v. Warminster Twp.*, 629 F.3d [121] at 130 [3d Cir. 2010] (quoting *Iqbal,* 129 S.Ct. at 1947, 1950); *see also Great Western Mining & Min. Co. v. Rothschild LLP*, 615 F.3d 159, 177 (3d Cir. 2010).

*Burtch*, 662 F.3d at 221.

The relevant record under consideration consists of the complaint and any "document integral or explicitly relied on in the complaint." *U.S. Express Lines, Ltd. v. Higgins,* 281 F.3d 383, 388 (3d Cir. 2002), citing *In re Burlington Coat Factory Sec. Litig.,* 114 F.3d 1410, 1426 (3d Cir. 1997). When considering a motion to dismiss, "it is axiomatic that the complaint may not be amended by the briefs in opposition to a motion to dismiss." *Commonwealth of Pa., ex rel. Zimmerman v. PepsiCo, Inc.,* 836 F.2d 173, 181 (3d Cir. 1988), quoting *Car Carriers v. Ford Motor Co.,* 745 F.2d 1101, 1107 (7th Cir. 1984) *cert denied* 470 U.S. 1054 (1984). The movant carries the burden of demonstrating that dismissal is appropriate. *Intel Corp.*, 496 F. Supp. 2d at 408.[19]

## (b) Discussion

Because the heightened pleading standard of Fed.R.Civ.P. 9(b) applies to allegations of actual fraud, the sufficiency of a constructive fraudulent transfer claim should be evaluated under Fed.R.Civ.P. 8(a), which requires "a short and plain statement of the claim showing that the pleader is entitled to relief." *Mervyn's LLC v. Lubert-Adler Group IV, LLC (In re Mervyn's Holdings, LLC),* 426 B.R. 488,

---

[19]The Litigation Trust objects to the Court's consideration of several documents included in the Sweeney Declaration, attached to the Defendants' Brief in Support of the Motion to Dismiss. (D.I. 5) The Litigation Trust asserts that the only documents that are integral or explicitly relied on in the Complaint are the Agreement, the October 7, 2004 Binding Memorandum of Understanding, and the Note. I agree, and, therefore, the other documents attached to the Sweeny Declaration will not be considered for purposes of the Motion to Dismiss.

495 (Bankr. D. Del. 2010). Therefore, "[a]ll that is needed at this stage is an allegation that there was a transfer for less than reasonably equivalent value at a time when the Debtors were insolvent." *Mervyn's*, 426 B.R. at 498, quoting *DVI Liquidating Trust v. Merrill Lynch & Co, et al. (In re DVI)*, 2008 WL 4239120, at *9 (Bankr. D. Del., Sept 16, 2008).

The Litigation Trust alleges that VVD did not receive reasonably equivalent value for the Defendants' minority rights and interests in VVD because the $11,199,000.00 distribution to the Defendants would have required the parties to value VVD at approximately $140 million on the date of the transaction.[20] The Trustee asserts that the price paid was objectively unreasonable because no legitimate valuation method could have arrived reasonably at this figure.

The Litigation Trust also alleges that VVD was insolvent at the time of the transfer or as a result of the transfer. First, the Litigation Trust alleges that VVD incurred massive debt prior to making the transfers through the protracted litigation and proceedings before administrative bodies in its bid to obtain the racing license, which represented little, if any, value by itself to VVD.[21] Second, the Litigation Trust alleges that the value of the racino was grossly overestimated and the VVD revenue projections were highly speculative because they were based on the prospective acquisition of a gaming license, which was never received.[22] Third, the Litigation Trust alleges that VVD incurred additional debt to make the 2007 Cash Transfer.[23] As a result of this, the Litigation Trust argues, VVD was insolvent at the time of the transfers (in

---

[20]Complaint, ¶ 21.

[21]Complaint, ¶¶ 13-17.

[22]The Complaint alleges that the racino was not economically viable unless it obtained a gaming license because the majority of revenue was projected to be derived from slot machines. Complaint, ¶ 22.

[23] Complaint, ¶20.

October 2007 and June 2008) or rendered insolvent by them. I conclude that the Litigation Trust has satisfied the pleading standards for the constructive fraudulent transfer claims.

In their Motion to Dismiss, the Defendants dispute the Litigation Trust's allegations and argue that reasonably equivalent value was exchanged for the transfers and VVD was solvent at the time of the transfers.[24] However, "[t]he issue of 'reasonably equivalent value' requires a factual determination that cannot be made on a motion to dismiss." *EPLG I, LLC v. Citibank, N.A. (In re Qimonda Richmond, LLC*, 467 B.R. 318, 327 (Bankr. D. Del. 2012); *see also Charys Liquidating Trust v. McMahan Sec. Co., L.P. (In re Charys Holding Co.)*, 443 B.R. 628, 638 (Bankr. D. Del. 2010) ("reasonably equivalent value is a fact intensive determination that typically requires testing through the discovery process."). Moreover, whether the company was insolvent at the time of the transfers at issue "is generally a factual determination not appropriate for resolution in a motion to dismiss." *Zazzali v. Mott (In re DBSI, Inc.)*, 445 B.R. 344, 349 (Bankr. D. Del. 2011). The Court, therefore, finds it inappropriate to consider Defendants' factual arguments at this stage in the proceedings.

The Defendants also argue that the 2007 Transfer is protected from avoidance by Bankruptcy Code §546(e). Whether the §546(e) safe harbor applies to the transfers in question also requires a determination of fact and is not suitable for disposition on a motion to dismiss under Fed.R.Bankr.P. 7012(b)(6). While some courts have considered the §546(e) defense at the motion to dismiss stage when the defense is clearly established on the face of the complaint, *see, e.g. Brandt v. B.A. Capital Co. LP (In re Plassein Int'l Corp.)*, 366 B.R. 318, 323–25 (Bankr. D.

---

[24]The Defendants' argue that the Litigation Trust's insolvency allegations are belied by documentary evidence. This argument is based, in part, upon the documents attached to the Sweeny Declaration. As discussed previously, many of those documents cannot be considered in connection with a Motion to Dismiss pursuant to Fed.R.Bankr.P. 7012(b)(6). Further briefing would be required to treat the Motion to Dismiss as a motion for summary judgment pursuant to Fed.R.Bankr.P. 7012(d).

Del. 2007),[25] here, it would be premature. The parties dispute the nature of the transfers at issue: the Litigation Trust argues that the transfers are liquidating partnership distributions, and not subject to the section 546(e) safe harbor, while the Defendants claim that the transfers are settlement payments made to complete a securities transaction, and therefore protected by section 546(e). The issue of whether the contested transfers are partnership distributions or settlement payments is, in part, a fact-based inquiry, which cannot be decided on a motion to dismiss.

## CONCLUSION

For the reasons set forth above, it is hereby **ORDERED** that the Defendants' Motion to Dismiss is hereby **DENIED**.

BY THE COURT:

_____
KEVIN J. CAREY
UNITED STATES BANKRUPTCY JUDGE

Dated: August 19, 2013

cc: Joseph H. Huston, Jr., Esquire[26]

---

[25]The Bankruptcy Court's decision was affirmed by the District Court and the Third Circuit Court of Appeals. *Brandt v. B.A.Capital Co L.P.,*366 B.R. 318 (Bankr.D.Del. 2007), *aff'd* 388 B.R. 46 (D.Del. 2008), *aff'd*, 590 F.3d 252 (3d. Cir. 2009), *cert. denied* 130 S.Ct. 2389 (2010).

[26]Counsel shall serve a copy of this Memorandum and Order upon all interested parties and file a Certificate of Service with the Court.