# UNITED STATES BANKRUPTCY COURT
# DISTRICT OF DELAWARE

| | |
|---|---|
| In re:<br>Centaur, LLC., *et al.*,<br><br>                         Debtors. | Case No. 10-10799 (KJC)<br><br>JOINTLY ADMINISTERED<br>Chapter 11 Cases |
| FTI CONSULTING, INC., as Trustee to the Centaur, LLC Litigation Trust.<br><br>                         Plaintiff,<br>        v.<br><br>JOSEPH SWEENEY AND LINDA PORR SWEENEY,<br><br>                         Defendants. | Adversary No. 12-50423-KJC |

**PLAINTIFF FTI CONSULTING, INC.'S SUPPLEMENTAL BRIEF
IN FURTHER SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT**

FTI Consulting, Inc. in its capacity as the Trustee of the Centaur LLC Litigation Trust (the "Trustee"), submits this brief statement in response to the Court's March 1, 2018 Order requiring submissions on the effect of the United States Supreme Court's decision in *Merit Management Group, LP v. FTI Consulting, Inc.*, 138 S. Ct. 883 (2018) on the Trustee's pending Motion for Summary Judgment ("Motion") on its fraudulent-transfer claims against Defendants Joseph and Linda Porr Sweeney (the "Sweeneys"). This submission is brief because *Merit Management* clearly rejects the Sweeneys' § 546(e) defense.

The Sweeneys opposed the Trustee's Motion, in relevant part, by arguing that § 546(e) of the Bankruptcy Code protects the transfers the Trustee seeks to avoid. The Sweeneys, however, base their arguments upon a broad reading of the scope of the § 546(e) safe harbor that

*Merit Management* rejects. Accordingly, as explained further below, the Sweeneys' § 546(e) defense fails as a matter of law.

In *Merit Management*, a case that also arises out of the Centaur LLC bankruptcy, the Supreme Court held that "that the plain meaning of § 546(e) dictates that the only relevant transfer for purposes of the safe harbor is the transfer that the trustee seeks to avoid." *Id.* at 888. In applying the safe harbor, the "component parts" of the transfer are ignored. *Id.* That is, the fact that a transfer was executed through "intermediaries" (*e.g.*, banks) is irrelevant to the § 546(e) defense. *Id.*; *see also id.* at 897 ("Transfers 'through' a covered entity [such as a "financial institution"], conversely, appear nowhere in the statute."). Because § 546(e) only applies to transfers between certain "covered entities"—such as "commodity brokers," "stockbrokers," and "financial institutions"—when neither the transferor/debtor nor transferee/defendant is a "covered entity," the transfer sought to be avoided falls outside of the § 546(e) safe harbor. *Id.* at 897; *see* 11 U.S.C. § 546(e).

In the present case, the transfers that the Trustee seeks to avoid are transfers from the debtor Valley View Downs LP ("Valley View Downs") to the Sweeneys. As such, similar to *Merit Management*, the fact that Credit Suisse initiated the transfers is "simply irrelevant." *Compare id.* at 895 ("[T]he Credit Suisse and Citizens Bank component parts are simply irrelevant to the analysis under § 546(e). The focus must remain on the transfer the trustee sought to avoid."), *with* Sweeneys' Opposition to Motion for Summary Judgment at 20 (contending that under the Third Circuit's "broad interpretation" of § 546(e), the safe harbor applies to the transfers from Valley View Downs to the Sweeneys because the payments were "'made by a financial institution' – Credit Suisse"). There is no dispute here that neither Valley View Downs nor the Sweeneys are "financial institutions" or any of the other covered entities identified in §

546(e).[1]  Therefore, the safe harbor does not apply as a matter of law to the constructively fraudulent transfer from Valley View Downs to the Sweeneys.

Accordingly, as further set forth in the Trustee's Motion, the Trustee respectfully requests that the Court enter judgment in the Trustee's favor and against the Sweeneys in the amount of $11,301,730.62, plus pre-judgment interest.

**Dated**: March 29, 2018

**Respectfully submitted,**

**ROSENTHAL MONHAIT & GODDESS, P.A.**

By:    /s/ Norman M. Monhait
Norman M. Monhait (#1040)
919 Market Street, Suite 1401
Wilmington, Delaware 19801
(302) 656-4433
nmonhait@rmgglaw.com
*Attorneys for Plaintiff*

OF COUNSEL:

Gregory S. Schwegmann (*pro hac vice*)
gschwegmann@rctlegal.com
Joshua J. Bruckerhoff (*pro hac vice*)
jbruckerhoff@rctlegal.com
REID COLLINS & TSAI LLP
1301 South Capital of Texas Hwy
Suite C300
Austin, Texas 78746
Tel.: (512) 647-6100
Fax: (512) 647-6129

---

[1] The term "financial institution" is defined as "(A) a Federal reserve bank, or an entity that is a commercial or savings bank, industrial savings bank, savings and loan association, trust company, federally-insured credit union, or receiver, liquidating agent, or conservator for such entity and, when any such Federal reserve bank, receiver, liquidating agent, conservator or entity is acting as agent or custodian for a customer (whether or not a 'customer', as defined in section 741) in connection with a securities contract (as defined in section 741) such customer." *See* 11 U.S.C. 101(22). Any attempt by the Sweeneys to argue that they or Valley View Downs are "financial institutions" under the definition must fail. In this case, neither Valley View Downs nor the Sweeneys were "customers" of a Federal reserve bank, commercial or savings bank, industrial savings bank, or savings and loan association "in connection with" any securities contract. Specifically, even if the October 2007 Agreement whereby Valley View Downs agreed to make liquidating partnership distributions to the Sweeneys could be considered a "securities contract," no financial institution acted as "agent" or "custodian" for either Valley View Downs or the Sweeneys in connection with the October 2007 Agreement.