## UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | : | |
| | : | Chapter 11 |
| CENTAUR, LLC., *et al.,*[1] | : | |
| | : | Case No. 10-10799 (KJC) |
| | : | (Jointly Administered) |
| Debtors. | : | |
| | : | |

| | | |
|---|---|---|
| FTI CONSULTING, INC., *as Trustee to the Centaur, LLC Litigation Trust,* | : | |
| | : | |
| | : | |
| Plaintiff, | : | |
| v. | : | Adv. Proc. No. 12-50423 (KJC) |
| | : | (Re: D.I. 87, 91) |
| JOSEPH SWEENEY and LINDA PORR SWEENEY | : | |
| | : | |
| Defendants. | : | |

### OPINION[2]

### BY:   KEVIN J. CAREY, UNITED STATES BANKRUPTCY JUDGE

Before the Court are two motions: (1) Joseph Sweeney and Linda Porr Sweeney's (the "Defendants") Motion to Reconsider and Amend Opinion and Order Granting Plaintiff's Motion for Summary Judgment (the "Reconsideration Motion")[3], and (2) FTI Consulting, in its capacity

---

[1] The Debtors in this case are: Centaur LLC; Centaur Colorado, LLC; Centaur Indiana, LLC; Centaur Racing, LLC; Hoosier Park, L.P.; HP Dining & Entertainment, LLC; Centaur Pennsylvania, LLC; VVD Properties General Partner, LLC; Valley View Downs GP, LLC; VVD Properties, LP, Centaur PA Land Management, LLC; Centaur PA Land, LP. Debtors Centaur PA Land, LP and Valley View Downs, LP filed their Chapter 11 petitions on October 28, 2009. Order dated April 16, 2010 approving joint administration of the Debtors' chapter 11 cases (Case No. 10-10799, D.I. 166). On March 15, 2013, the Court entered a Final Decree closing the Debtors' chapter 11 cases, except for Valley View Downs, L.P. (Case No. 09-13761) (Case No. 10-10799, D.I. 2305).

[2] This Opinion constitutes the findings of fact and conclusions of law required by Fed. R. Bankr. P. 7052. This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 1334(b) and 157. This is a core proceeding pursuant to 28 U.S.C. §§ 157(b)(1), (b)(2)(A) and (b)(2)(H), and the Court has authority to enter a final order consistent with Article III of the United States Constitution.

[3] D.I. 87.

as the Trustee of the Centaur, LLC Litigation Trust (the "Trustee") Motion for an Award of Pre- and Post-Judgment Interest (the "Interest Motion").[4] The Defendants move the Court to reconsider and amend its Opinion[5] and Order[6] entered December 27, 2018, granting summary judgment on the Complaint filed by the Trustee on March 16, 2012. Further, the Trustee seeks both pre- and post-judgment interest on the judgment entered in the Trustee's favor. For the reasons set forth below, the Reconsideration Motion will be denied and the Pre- and Post-Judgment Motion will be granted.

## **BACKGROUND**

The Opinion dated December 27, 2018 was a result of years of arduous labor between the parties.[7] The Trustee filed the Complaint on March 16, 2012, and the Defendants moved to dismiss the Complaint on April 27, 2012.[8] Oral argument was held on October 3, 2012. The Court denied the motion to dismiss by Memorandum and Order dated August 19, 2013,[9] determining that there were factual issues to be determined including: (1) whether the debtors were insolvent at the time of the transfer, (2) whether reasonably equivalent value was given in exchange for the transfer, and (3) whether the § 546(e) safe harbor applies to the transfer. On September 20, 2013, the Defendants filed and served the Answer to the Complaint (the "Answer")[10] and listed eleven affirmative defenses.

The defenses listed in the Answer are as follows:[11]

---

[4] D.I. 91.
[5] D.I. 82.
[6] D.I. 83.
[7] *See* D.I. 82. The Opinion states the undisputed facts underlying the Opinion.
[8] D.I. 4.
[9] D.I. 26.
[10] D.I. 29.
[11] The following defenses are paraphrased from the Answer. *See* D.I. 29.

2

1. The Complaint fails to allege sufficient facts plausibly establishing the Defendant's liability on the causes of action asserted.
2. The transfers were not made by or for the benefit of any debtor.
3. The Trustee's claims are barred by operation of the doctrines of waiver, laches, ratification and estoppel.
4. To the extent the debtor was insolvent when the alleged transfers were made, the Trustee may not avoid them.
5. To the extent that the alleged transfers are avoidable, then pursuant to section 550(b)(1), the Defendants took them for value, in good faith and without knowledge of the voidability of the alleged transfers.
6. The Defendants did not improve their position through the alleged transfers.
7. The Debtors received reasonably equivalent value on account of the transfers.
8. One or more of the alleged transfers were made on behalf of a Debtor other than the Debtor which owed the corresponding debt.
9. The Trustee is not entitled to recover a transfer where the benefit would be to a post-petition administrative creditor.
10. In the event that a person or entity is liable for injuries or damages in this action, any verdict in favor of the Trustee against the Defendants is to be reduced by the amount of prior settlement or assessed percentage of culpability.
11. The claims must be dismissed to the extent they are barred by the applicable statute of limitations or repose.

A Scheduling Order was agreed to, and all fact discovery was required to be completed no later than April 4, 2014.[12] The proceeding was assigned to mediation on January 23, 2014, but due to scheduling concerns, the mediator was replaced.[13] The mediation commenced on June 18, 2014, and it continued with no resolution into November 2014. On May 8, 2015, the Trustee filed the Motion for Summary Judgment.[14] The Defendants filed their Brief in Opposition on June 9, 2015.[15] The Brief in Opposition focused solely on the alleged fraudulent transfers under section 548(a)(1)(B) and the application of the safe harbor protection of section 546(e). Neither the Brief in Opposition nor the attached Declaration of Joseph Sweeney raised other affirmative defenses, such as the applicability of section 544; the inquiry was on sections 548(a)(1)(B) and 546(e).

---

[12] D.I. 31.
[13] *See* D.I. 35, D.I. 41.
[14] D.I. 51.
[15] D.I. 54.

Oral argument was heard on December 7, 2015, and the Court took the matter under advisement.[16] Subsequently, the United States Supreme Court granted certiorari in a similar case arising out of the Seventh Circuit, *Merit Management Group LP v. FTI Consulting, Inc.*[17] The parties advised the Court that they agreed to suspension of the consideration of the Motion for Summary Judgment, pending the Supreme Court's decision. The Supreme Court's opinion was issued on February 17, 2018, affirming the Seventh Circuit. The Court then invited supplemental briefing to address the implications of the *Merit Management* decision. The Trustee submitted a supplemental brief on March 29, 2018, stating that the *Merit Management* decision nullified the Defendants' section 546(e) safe harbor defense. The Defendants did not submit a supplemental brief.[18]

Consequently, the Court issued its opinion on December 27, 2018 and provided leave to the Trustee to submit a claim for pre- and post-judgment interest.[19] Up until this point, the parties briefing focused exclusively on the issues of solvency and the avoidability of the transfers, and on whether the section 546 (e) safe harbor defense applies to the transfers. However, now, the Defendants claim that the Court failed to take into account its other defenses, although none were ever raised in papers or during oral argument. The Defendants request reconsideration of the Opinion and Order to include their newly prioritized defenses, or an amendment to the Opinion and Order making it clear that the defenses were rejected.

---

[16] D.I. 75.

[17] 830 F.3d 690 (7th Cir. 2016), *cert granted* 138 S.Ct. 883 (2017).

[18] In the Reconsideration Motion, the Defendants state "The Court invited additional briefing which the Trustee accepted but the Sweeneys did not because of the clarity of the holding in *Merit Management*." D.I. 87, ¶ 9.

[19] D.I. 82.

## DISCUSSION

### I. Motion for Reconsideration

The Federal Rules of Civil and Bankruptcy Procedure do not recognize a motion for reconsideration; however federal courts, and bankruptcy courts, are authorized to review such motions by inherent authority.[20] A motion for reconsideration should not be used to relitigate issues the court has already decided or be used to advance arguments that could have made prior to judgment, but did not.[21] A judgment may be altered or amended pursuant to Fed. R. Civ. P. 59(e), made applicable to bankruptcy proceedings by Fed. R. Bankr. P. 9023, if the party seeking reconsideration shows at least one of the following reasons: "(1) an intervening change in the controlling law, (2) the availability of new evidence that was not available when the court granted the motion for summary judgment, or (3) the need to correct a clear error of law or fact or to prevent manifest injustice."[22]

Neither party contends that the first two prongs are at issue; however, the Defendants submit that it would be manifestly unjust to deprive them of the right to develop a record for their remaining defenses.

The exact definitions of "manifest injustice" and "clear error of law or fact" are undefined, and there appears to be no true consensus on a uniform application of the terms. With respect to "manifest injustice" various courts have observed the following:

> There is no judicial consensus ... but several courts have applied the Black's Law Dictionary definition, which states that "manifest injustice" is an error in the trial court that is direct, obvious, and observable, such as a defendant's guilty plea that is involuntary or that is based on a plea agreement that the prosecution rescinds. A party may only be granted reconsideration based on manifest injustice if the error is apparent to the point of being indisputable. In order for a court to reconsider a decision due to

---

[20] *In re Energy Future Holdings Corp.*, 904 F.3d 298, 307 (3d Cir. 2018) (citations omitted).

[21] *In re Energy Future Holdings Corp.*, 575 B.R. 616, 627 (Bankr. D. Del. 2017).

[22] *Max's Seafood Café ex rel. Lou-Ann, Inc., v. Quinteros*, 176 F.3d 669, 677 (3d Cir.) (citations omitted).

"manifest injustice," the record presented must be so patently unfair and tainted that the error is manifestly clear to all who view it.[23]

Similarly, courts have determined that "clear error of law or fact" requires a finding that the error is "plain and indisputable ... amount[ing] to a complete disregard of the controlling law or the credible evidence in the record."[24]

Despite having multiple opportunities to fully develop the record in support of their affirmative defenses, Defendants believe that it would be manifestly unjust to deprive them of another opportunity to do the same. Both sides briefed the Trustee's Motion for Summary Judgment, yet no other defenses were discussed. Oral argument on the issues was held, but no mention was made of any other defenses besides the section 546(e) safe harbor. The Court also requested supplemental briefing after the *Merit Management* decision, yet the Defendants provided none. A motion to reconsider cannot be used to argue issues that were inexcusably absent from previous proceedings, and it is anything but manifestly unjust to prevent the Defendants from arguing defenses that they have already had the opportunity to argue.

The Defendants point to three specific issues to be reviewed by the Court. First, the Defendants ask that they be able to pursue their Eighth Affirmative Defense, to show that a debtor other than a transferor received a benefit from the transfer. Defendants had the opportunity to present support for this defense, yet chose not to do so in briefing or oral argument. Second, the Defendants ask that Mr. Sweeney be given time to offer testimony on the financial position of the business and business prospects at the time of the transfer. However, Mr. Sweeney provided a

---

[23] *In re Maxus Energy Corp.*, 571 B.R. 650, 655 (Bankr. D. Del. 2017) (citing *In re Titus*, 479 B.R. 362, 367–68 (Bankr. W.D. Pa. 2012) (quoting *In re Roemmele*, 466 B.R. 706, 712 (Bankr. E.D. Pa. 2012)); *accord Teri Woods Pub., L.L.C. v. Williams*, No. CIV.A. 12-04854, 2013 WL 6388560, at *2 (E.D. Pa. Dec. 6, 2013).
[24] *Maxus*, 571 B.R. at 655 (citing *Titus*, 479 B.R. 362 at 368) (quoting *In re Oak Park Calabasas Condominium Ass'n*, 302 B.R. 682, 683 (Bankr. C.D. Cal. 2003) (internal citations omitted).

declaration in opposition to the Motion for Summary Judgment and failed to provide testimony on the issue of value. Third, the Defendants request that they be permitted to pursue their Third Affirmative Defense of estoppel. However, estoppel was inexcusably omitted from previous filings, and the Defendants concede that this novel application of estoppel has not been applied in similar circumstances.

The Defendants have had ample opportunity to develop their defenses, but chose only to pursue the section 546(e) safe harbor exception. I will not permit the parties to litigate issues that they previously could have brought to the Court's attention, but chose not to. The Defendants have not met their burden in proving that it would be manifestly unjust to deprive them of another opportunity to present defenses.

## II. Pre-Judgment Interest

While there is no reference to pre-judgment interest in the Bankruptcy Code, courts have relied on the word "value" in section 550(a) to authorize an interest award.[25] Section 550(a) provides that:

> (a) Except as otherwise provided in this section, to the extent that a transfer is avoided under section 544, 545, 547, 548, 549, 553(b), or 724(a) of this title, *the trustee may recover*, for the benefit of the estate, the property transferred, or, if the court so orders, *the value of such property*, from-
> > (1) the initial transferee of such transfer or the entity for whose benefit such transfer was made; or
> > (2) any immediate or mediate transferee of such initial transferee.[26]

The award of pre-judgment interest is within the discretion of the bankruptcy court.[27] However, "discretion must be exercised according to law, which means that pre-judgment interest

---

[25] *In re Hechinger Inv. Co. of Delaware, Inc.*, 489 F.3d 568, 579 (3d Cir. 2007) (citing *In re Art Shirt Ltd., Inc.*, 93 B.R. 333, 341 n. 9 (E.D. Pa. 1988)).

[26] 11 U.S.C. § 550(a) (emphasis added).

[27] *In re AE Liquidation, Inc.*, 2016 WL 1238848, *2 (Bankr. D. Del. March 29, 2016) (citing *In re Hechinger*, 489 F.3d 568 at 580-81)).

should be awarded unless there is a sound reason not to do so."[28] Courts often find that awarding pre-judgment interest in an avoidance action furthers the congressional policies of the Bankruptcy Code by compensating the estate for the time it could not access the transferred funds.[29] The Defendants argue that pre-judgment interest should not be awarded because the case has lasted a long time, attributing fault to the justice system rather than to either party. However, this misunderstands why courts award pre-judgment interest. "Compensation deferred is compensation reduced by the time value of money."[30] If the proceeds had been returned to the Centaur estate and distributed to the creditors, they would have been able to earn interest during the last few years.

The court must next determine for what period the pre-judgment interest award is due. The Trustee argues that the pre-judgment interest should accrue from the date of the transfers, October 20, 2007 and June 30, 2008. However, the Defendants argue that if pre-judgment interest accrues, it should accrue from the date the adversary proceeding was commenced, March 12, 2016. Here, the pre-judgment interest will be due from the date of the filing of the Complaint (March 16, 2012), provided however, no pre-judgment interest will be accrued from the date that the parties agreed that this Court should defer ruling (May 4, 2017) until the Supreme Court issued its decision in *Merit Management* (February 17, 2018). Pre-judgment interest will also be awarded from February 17, 2018 until the date of this Court's summary judgment decision (December 27, 2018). The parties agree that the rate of pre-judgment interest should be the rate set forth in 28 U.S.C. § 1961.

---

[28] *In re Opus East, LLC*, 528 B.R. 30, 108 (Bankr. D. Del. 2015) (citing *Matter of Milwaukee Cheese Wisconsin, Inc.* 112 F.3d 845, 849 (7th Cir. 1997)).
[29] *In re USN Communications, Inc.*, 280 B.R. 573, 602 (Bankr. D. Del. 2002).
[30] *Milwaukee Cheese*, 112 F.3d 845 at 849.

### III. Post-Judgment Interest

Post-judgment interest is mandated by federal statute. 28 U.S.C.A. § 1961 provides:

(a) Interest shall be allowed on any money judgment in a civil case recovered in a district court. Execution therefor may be levied by the marshal, in any case where, by the law of the State in which such court is held, execution may be levied for interest on judgments recovered in the courts of the State. Such interest shall be calculated from the date of the entry of the judgment, at a rate equal to the weekly average 1-year constant maturity Treasury yield, as published by the Board of Governors of the Federal Reserve System, for the calendar week preceding the date of the judgment. The Director of the Administrative Office of the United States Courts shall distribute notice of that rate and any changes in it to all Federal judges.

(b) Interest shall be computed daily to the date of payment except as provided in section 2516(b) of this title and section 1304(b) of title 31, and shall be compounded annually.

(c)(1) This section shall not apply in any judgment of any court with respect to any internal revenue tax case. Interest shall be allowed in such cases at the underpayment rate or overpayment rate (whichever is appropriate) established under section 6621 of the Internal Revenue Code of 1986.

(2) Except as otherwise provided in paragraph (1) of this subsection, interest shall be allowed on all final judgments against the United States in the United States Court of Appeals for the Federal circuit, at the rate provided in subsection (a) and as provided in subsection (b).

(3) Interest shall be allowed, computed, and paid on judgments of the United States Court of Federal Claims only as provided in paragraph (1) of this subsection or in any other provision of law.

(4) This section shall not be construed to affect the interest on any judgment of any court not specified in this section.[31]

Courts have held that section 1961 applies to bankruptcy court judgments.[32] Therefore, the Defendants are required to be liable for post-judgment interest payments, as of the date of the summary judgment decision, consistent with rate outlined in § 1961.

---

[31] 28 U.S.C.A. § 1961.

[32] *In re Stephen Douglas, Ltd.*, 174 B.R. 16, 22 (Bankr. E.D. N.Y. 1994) (citing *Firestone Tire & Rubber Co. v. Goldblatt Bros., Inc.*, 61 B.R. 459, 466 n.4 (Bankr. N.D. Ill. 1986)); *DuVoisin v. Anderson (In re Southern Indus. Banking Corp.)*, 87 B.R. 518, 520 (Bankr. E. D. Tenn.1988).

## **CONCLUSION**

For the reasons set forth above, I conclude that the Motion to Reconsider is denied. The

Motion for an Award of Pre- and Post-Judgment interest is granted. An appropriate Order follows.

BY THE COURT:

KEVIN J. CAREY
UNITED STATES BANKRUPTCY JUDGE

Dated: May 13, 2019

10